LAURA LEIGH BOONE (STOTT) BROMHAL v. E. GREGORY STOTT

No. 520A94

(Filed 6 October 1995)

**Divorce and Separation § 520 (NCI4th)— separation agreement—attorney fee provision—public policy—validity**

A provision in a separation agreement for the recovery of attorney fees incurred to enforce provisions of the agreement does not violate public policy and is valid and binding under N.C.G.S. § 52-10.1.

**Am Jur 2d, Divorce and Separation §§ 829, 838, 839.**

Appeal by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 116 N.C. App. 250, 447 S.E.2d 481 (1994), affirming judgment for the plaintiff entered by Willis, J., on 3 November 1992 in District Court, Wake County. Heard in the Supreme Court 21 June 1995.

*Brady, Schilawski, Earls and Ingram, by Michael F. Schilawski, for plaintiff-appellee.*

*Jack P. Gulley for defendant-appellant.*

ORR, Justice.

This case arises out of a Separation Agreement (hereinafter "Agreement") executed by the parties, which provides for an award of attorney's fees should a party fail to comply with the terms of the Agreement. The sole question presented by this appeal is whether the trial court erred in its award of attorney's fees to the plaintiff pursuant to this provision of the Agreement.

**BROMHAL v. STOTT**

[341 N.C. 702 (1995)]

The record reflects that the parties married on 23 April 1977 and separated on or about 17 August 1987. Two minor children were born to the parties during the marriage. The parties entered into a Separation Agreement and subsequently a Modification Agreement. Defendant failed to comply with the child support provision of the Modification Agreement, giving rise to plaintiff's suit.

The complaint was filed on 28 December 1988 and an amended complaint was filed on 13 June 1989. In her complaint, plaintiff requested an order requiring defendant to pay the deficient child support and also sought reimbursement of attorney's fees pursuant to paragraph 27 of the Agreement, which provides:

Suit costs. If either party shall fail to keep and perform any agreement or provision hereof, the other party shall be entitled to recover reasonable attorney's fees and any and all other expenses incurred in any action instituted to enforce provisions of this agreement.

In a judgment entered 3 November 1992, plaintiff was awarded $22,550.49, plus interest, for unpaid child support and reimbursement for one additional marital debt, and defendant was ordered to compensate plaintiff for attorney's fees incurred at all stages of the case in the amount of $40,000.

Defendant appealed this judgment to the Court of Appeals, which affirmed the trial court's order by a divided panel. The dissent was based solely on the issue of attorney's fees, which is now before this Court. Defendant contends that the provision in the Agreement for recovery of attorney's fees is invalid because it lacks statutory authority. We disagree.

Although the Court of Appeals has addressed the issue before us in several cases, including *Edwards v. Edwards*, 102 N.C. App. 706, 403 S.E.2d 530, *disc. rev. denied*, 329 N.C. 787, 408 S.E.2d 518 (1991), this Court has not directly considered the contractual recovery of attorney's fees in the context of separation agreements. The majority at the Court of Appeals below, in reliance upon *Edwards*, based the statutory authority for approval of the recovery of attorney's fees on N.C.G.S. § 52-10.1, which controls separation agreements.

Any married couple is hereby authorized to execute a separation agreement not inconsistent with public policy which shall be legal, valid, and binding in all respects. . . .

N.C.G.S. § 52-10.1 (1991). There can be no question that this broad language in N.C.G.S. § 52-10.1 statutorily authorizes a married couple in executing a separation agreement to include any provision, including the one in question, unless that specific provision violates public policy. It is therefore necessary for us in addressing this issue to determine whether the inclusion of a provision for the recovery of attorney's fees in a separation agreement violates the public policy of the State of North Carolina.

In her article *"Semantics as Jurisprudence: The Elevation of Form Over Substance in the Treatment of Separation Agreements in North Carolina,"* 69 N.C. L. Rev. 319, 319-20 (1991) [hereinafter "Sharp"], Sally Burnette Sharp, professor of law at the University of North Carolina at Chapel Hill, states:

> Separation or marital settlement agreements are, quite correctly, said to minimize the psychological and economic costs of divorce, to create better prospects for post-divorce cooperation between the parties, to lessen the impact of divorce upon children, and to promote judicial economy. It is hardly surprising, therefore, to find that these agreements are the vehicle by which the distributional consequences of the overwhelming majority of divorces in this country are concluded.

As such, it is obvious that the General Assembly of North Carolina views the utilization of separation agreements as instruments of sound public policy in North Carolina in dealing with the growing number of divorces taking place in our society.

One of the assumptions in the Sharp article is that "settlement agreements are fundamentally different from other kinds of contracts. They deal with issues of custody, support, and distribution of wealth that have consequences of immense significance, not only to the parties involved, but to the state as well." *Id.* at 326.

> [T]he state has strong and legitimate policy interests in settlement agreements that differ markedly from its interests in most other private contracts. In general, the state has an interest in protecting all citizens from bargaining contexts which are peculiarly conducive to overreaching tactics. Specifically, the state has a very real interest in the creation of some procedures by which it can ensure that settlement agreements make adequate provision for children and dependent spouses.

*Id.* at 349. The enforcement of provisions for the recovery of attorney's fees in settlement agreements helps ensure that provisions for support of children and dependent spouses in those agreements will be enforced by allowing a party to the agreement to seek enforcement in a court of law and to recover the legal expenses associated with that enforcement. Thus, parties would not be disadvantaged by choosing to resolve these issues privately in a settlement agreement instead of pursuing a court action for child support or custody or for alimony in which attorney's fees may be granted under N.C.G.S. §§ 50-13.6 and 50-16.4. We conclude that the public policy of this State encourages settlement agreements and supports the inclusion of a provision for the recovery of attorney's fees in settlement agreements.

Turning our attention to the facts of the case *sub judice*, enforcement of the particular provision for the recovery of attorney's fees at issue is not inconsistent with public policy. The Agreement in question was drafted by the defendant, an attorney licensed in North Carolina, and on 27 September 1989, both parties stipulated that the Separation Agreement and modifications made to it were valid and enforceable. There is also uncontested evidence that the trial court made extensive findings of fact and conclusions of law in regard to the necessity of the plaintiff bringing a lawsuit to enforce the provisions of the Separation Agreement and incurring substantial attorney's fees and costs in her effort to enforce the provisions. There is no issue brought forward by the defendant questioning the amount of attorney's fees awarded by the trial court. The sole contention, as previously noted, is that the trial court was without authorization to impose the attorney's fees.

In arguing that the provision at issue should not be enforced, defendant relies on a line of North Carolina cases where the appellate courts have refused to enforce attorney's fees indemnification clauses in contracts in the context of business-oriented lawsuits. These cases do not mandate that the provision at issue is against public policy. The policy reasons given for denying enforcement in the cases cited do not apply to the facts before us.

This Court first addressed a contractual provision indemnifying a party for attorney's fees in *Tinsley v. Hoskins*, 111 N.C. 340, 16 S.E. 325 (1892), which concerned a promissory note. In invalidating the provision, this Court stated that it could result in an oppressive penalty, serve as a shield for usury and promote litigation; that it

"tends to the oppression of debtors to sanction their incorporation in *commercial instruments*"; and that "stipulations *like the one now sued upon*, when incorporated into obligations *of this particular character*, are against public policy and therefore invalid." *Id.* at 341-42, 16 S.E. at 325-28 (emphasis added). Thus, this Court's decision in *Tinsley* was limited strictly to commercial instruments.

*Williams v. Rich*, 117 N.C. 235, 23 S.E. 257 (1895), extended the rationale to invalidate an attorney's fees indemnity provision in a deed of trust because such stipulations are in the nature of forfeitures, they encourage litigation, they "can readily be used to cover usurious agreements, and excessive exactions may be had under the guise of an attorney's fee." *Id.* at 240, 23 S.E. at 259.

The rule was established to protect debtors from the "opportunity for oppression" by lending institutions in collecting on notes, mortgages and deeds of trust. *Turner v. Boger*, 126 N.C. 300, 302, 35 S.E. 592, 593 (1900).

In *Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 266 S.E.2d 812 (1980), this Court applied these same justifications to the commercial lease of specific goods by requiring statutory authority for a contractual provision indemnifying a party for attorney's fees. We enunciated the law in North Carolina as " 'frown[ing] upon contractual obligations for attorney's fees as part of the costs of an action' " and reviewed cases that had adhered to this general rule based on public policy considerations. *Id. at* 289-90, 266 S.E.2d at 814-15 (quoting *Supply, Inc. v. Allen*, 30 N.C. App. 272, 276, 227 S.E.2d 120, 123 (1976)). All of the cases reviewed involved a promissory note, a deed of trust, a guaranty on a promissory note or a commercial construction contract.

However, the public policy justifications in debtor-creditor and commercial contract cases do not apply to a separation agreement. A separation agreement is different from a commercial, arms-length transaction. It cannot be analyzed in terms of the marketplace and bargaining power.

As Sharp notes in her article, separation agreements are in fact different from other types of contracts.

Standard contract principles are designed to operate within the context of a rational, competitive market that assumes a relative parity of bargaining strength between the parties. To equate the "market" of settlement agreements, marriage dissolution—a situ-

ation virtually always accompanied by extraordinary stress and rarely accompanied by mutual desires to achieve fair results— with the paradigmatic "marketplace" in which strangers bargain at arms' length, is simply to ignore the realities of human nature, the adversarial process, and the realities of most divorce bargaining.

Sharp, 69 N.C. L. Rev. at 350. The public policy rationale for frowning upon contractual provisions for the recovery of attorney's fees in the commercial and debtor-creditor context simply does not apply to separation agreements.

The provision for recovery of attorney's fees is therefore not inconsistent with public policy and is therefore legal, valid and binding under N.C.G.S. § 52-10.1.

Accordingly, we affirm the order of the Court of Appeals affirming the trial court's award of attorney's fees to plaintiff.

AFFIRMED.