FINLEY FOREST CONDOMINIUM ASSOCIATION, INC., Plaintiff-Appellant v. BILL PERRY and WAYNE DENTON, d/b/a NEUSE RIVER CONSTRUCTION and DHC CONSTRUCTION, INC., Defendants-Appellees

No. COA03-155

(Filed 20 April 2004)

## 1. Appeal and Error— appealability—trial court not ruling on motion

The Court of Appeals was not able to review an issue involving the use of expert affidavits in a summary judgment where the trial court never ruled on plaintiff's objection and motion to strike.

## 2. Construction Claims— roofing—subcontractor assisting prior stage work—no assumption of duty

The trial court did not err by granting summary judgment to DHC where DHC was a subcontractor on a roofing project, DHC's task was to install roofing trusses and plywood, DHC assisted in the removal of the old roofs after it arrived on the scene solely to stay within the allotted time for the trusses, and a rainstorm came during the work, damaging the buildings. The evidence did not establish that DHC assumed a duty to weatherproof the buildings.

## 3. Appeal and Error— appealability—no notice of appeal

The Court of Appeals was without jurisdiction to consider a partial summary judgment involving costs where plaintiff did not file a notice of appeal from the order.

Appeal by plaintiff from an order entered 25 October 2002 by Judge Wade Barber in Superior Court, Orange County. Heard in the Court of Appeals 30 October 2003.

*Alexander & Miller, L.L.P., by Phaedra A.O. Kelly, Sydenham B. Alexander, Jr., and Jo Ann Ragazzo, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Gregory W. Brown and Katherine Hilkey-Boyatt, for DHC Construction, Inc., defendant-appellee.*

McGEE, Judge.

Finley Forest Condominium Association, Inc. (plaintiff) appeals from summary judgment entered in favor of DHC Construction, Inc. (defendant).

Pursuant to plaintiff's Declaration of Condominium, filed in Orange and Durham counties, plaintiff is responsible for the maintenance and repair of common property of the condominium. Plaintiff contracted in the fall of 2000 with James Kramer (Kramer), an engineer, to draft plans and specifications for the replacement of roofs on five buildings, numbered 26, 27, 28, 47, and 52. Each building contained several individual condominium units. Plaintiff wished to replace the flat style roof of the buildings with a pitched roof in order to prevent future water damage. Once the plans were completed and approved by plaintiff's board of directors, the specifications were submitted for bid to general contractors licensed in North Carolina.

Plaintiff contracted on 20 August 2001 with Bill Perry and Wayne Denton, doing business as Neuse River Construction (Neuse River), to replace the roofs in accordance with the specifications drawn up by Kramer. Unbeknownst to plaintiff, Neuse River hired DHC Construction, Inc. (DHC) as a subcontractor to install pre-manufactured trusses and to lay plywood over the trusses on the roofs of buildings 47 and 52. Neuse River informed DHC that another party would lay tarpaper over the plywood and install the roof shingles. According to the agreement, DHC was to complete the framing by 2 September 2001 and DHC would be penalized for any delay thereafter. All construction materials were supplied by Neuse River. The record on appeal does not include a copy of the contract between Neuse River and DHC.

DHC arrived at the job site on 30 August 2001 to begin work on buildings 47 and 52. At that time, several Neuse River employees had already begun to remove a significant portion of the rubber membrane that served to weatherproof the flat roof of building 52. In addition, some plywood had been cut away. DHC assisted Neuse River in removing the remaining plywood on building 52 in order that plaintiff could begin installation of the support system necessary for the new trusses.

Meanwhile, on building 47, Neuse River employees had removed two feet of the rubber membrane from around the roof's perimeter. DHC employees assisted Neuse River employees in laying two-by-eight lumber around the sides of the roof. In addition, DHC employees were engaged in modifying the pre-manufactured trusses provided by Neuse River because the trusses were not the correct size for the project.

In the early afternoon, a heavy rain storm caused substantial water damage to buildings 47 and 52, damaging the eight units in each building. At the time of the storm, portions of buildings 47 and 52 were covered by tarps supplied by Neuse River. Bill Perry, a foreman with Neuse River attempted to purchase additional tarps at the time of the storm. At the request of Neuse River, DHC employees assisted in laying the tarps.

Following the rain storm, DHC employees left the job site and did not return until the next day, 31 August 2001. At that time, DHC employees completed laying the plywood on building 52 and agreed with Neuse River to lay the tarpaper over the plywood. Over the course of the next two days, DHC agreed to Neuse River's additional requests that DHC remove the remaining rubber membrane and plywood on building 47, prepare the roof for the new trusses, and lay the tarpaper. DHC completed all the work initially covered by the original contract and all the work negotiated thereafter by Neuse River.

Neuse River eventually abandoned the project and plaintiff hired another contractor to complete the work detailed in plaintiff's contract with Neuse River. The contractor also repaired the damage resulting from the water intrusion to the common areas and individual units of buildings 47 and 52.

According to the testimony of Kramer and others, the weather forecast on 30 August 2001 had called for thunderstorms. A light rain preceded the heavy storm that day. Kramer, who was unaware of DHC's involvement, raised his concern to individuals on the job site that the roofs were not adequately protected in the event of rain.

The specifications for the project, as incorporated in the contract between plaintiff and Neuse River, explicitly required that all work be left weathertight each night. According to the written agreement, the general contractor was responsible for all weather damage when the building was left exposed to the elements. The possibility of thunderstorms in the summer months was noted in the contract.

Plaintiff filed a complaint on 22 October 2001 asserting numerous claims against Neuse River and DHC. Neuse River failed to file an answer and an entry of default was made against Neuse River. Neuse River is not a party to this appeal. Both plaintiff and DHC filed motions for summary judgment. The trial court granted summary judgment in favor of DHC and taxed costs against plaintiff. Plaintiff appeals.

**[1]** Plaintiff first assigns error to the trial court's alleged admission and consideration of DHC's expert affidavits in determining summary judgment. DHC submitted the affidavits at issue in opposition to plaintiff's motion for partial summary judgment and in support of DHC's own motion for summary judgment.

Plaintiff filed an objection and a motion to strike the affidavits on the grounds that the affidavits failed to comply with the requirements of Rule 56 of the North Carolina Rules of Civil Procedure. According to the record, the trial court never ruled on plaintiff's objection and motion to strike the affidavits. This Court is unable to review the issue concerning the trial court's admission and consideration of the affidavits since there is nothing before this Court indicating the trial court's ruling on the question. N.C.R. App. P. 10(b)(1) provides that in order to preserve a question for appellate review, it is "necessary for the complaining party to obtain a ruling upon the party's request, objection or motion." Because plaintiff failed to obtain such a ruling, plaintiff's assignment of error number one is overruled.

**[2]** Plaintiff next contends the trial court erred in denying plaintiff's motion for partial summary judgment and in granting DHC's motion for summary judgment as to the issue of liability.

N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003) proscribes that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to a judgment as a matter of law." An issue is deemed genuine "if it is supported by substantial evidence," *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002), and "a fact is material if it would constitute or would irrevocably establish any material element of a claim or a defense." *Bone International, Inc. v. Brooks*, 304 N.C. 371, 375, 283 S.E.2d 518, 520 (1981).

In order to prevail on a motion for summary judgment, a moving party meets its burden by "proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Collingwood v. G. E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). " 'Once the moving party meets this burden, the burden is then on the opposing party

to show that a genuine issue of material fact exists. . . . If the opponent fails to forecast such evidence, then the trial court's entry of summary judgment is proper.' " *Mozingo v. Pitt County Memorial Hospital*, 101 N.C. App. 578, 583, 400 S.E.2d 747, 750 (quoting *White v. Hunsinger*, 88 N.C. App. 382, 383, 363 S.E.2d 203, 204 (1988)), *cert. denied*, 329 N.C. 498, 407 S.E.2d 537 (1991). The trial court is to consider all evidence in the light most favorable to the opposing party. *DeWitt*, 355 N.C. at 682, 565 S.E.2d at 142.

Summary judgment is "rarely appropriate in a negligence action because ordinarily it is the duty of the jury to apply the standard of care of a reasonably prudent person." *Abner Corp. v. City Roofing & Sheetmetal Co.*, 73 N.C. App. 470, 472, 326 S.E.2d 632, 633 (1985). To survive a motion for summary judgment, plaintiff must have established a *prima facie* case of negligence by showing: "(1) defendant failed to exercise proper care in the performance of a duty owed to plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances as they existed." *Lavelle v. Schultz*, 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995), *disc. review*, 342 N.C. 656, 467 S.E.2d 715 (1996). In the case before us, plaintiff alleges that DHC was negligent in failing to provide buildings 47 and 52 with adequate protection from water intrusion.

Generally, where the facts are undisputed, "[t]he issue of whether a duty exists is a question of law for the court." *Mozingo*, 101 N.C. App. at 588, 400 S.E.2d at 453; *see* 57A *Am. Jur. 2D Negligence* § 86 (court is to determine as a matter of law, the existence, scope or range of the duty). Because no contract existed between plaintiff and DHC, plaintiff does not present a contract claim, but instead correctly argues that it need not prove privity of contract in order to prove the existence of a duty. *See Olympic Products Co. v. Roof Systems, Inc.*, 88 N.C. App. 315, 363 S.E.2d 367, *disc. review denied*, 321 N.C. 744, 366 S.E.2d 862 (1988).

In tort, no liability exists unless the law imposes a duty. "It is well settled law in North Carolina that privity of contract is not required in order to recover against a person who negligently performs services for another and thus injures a third party." *Ingle v. Allen*, 71 N.C. App. 20, 26, 321 S.E.2d 588, 594 (1984), *disc. review denied*, 313 N.C. 508, 329 S.E.2d 391 (1985), *overruled in part on other grounds*, 351 N.C. 172, 521 S.E.2d 707 (1999).

This Court has recognized six factors to be balanced in determining

> [w]hether a party has placed himself in a position where his affirmative conduct may be expected to affect the interest of another person, so that tort law will impose upon him an obligation to act in such a way that the other person will not be injured. . . .

>> (1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.

*Ingle*, 71 N.C. App. at 27, 321 S.E.2d at 594 (citations omitted).

Neuse River originally contracted with DHC solely to install the pre-manufactured trusses and to lay plywood over those trusses. All supplies were to be provided by Neuse River. At no time was plaintiff aware of DHC's presence nor did plaintiff and DHC ever converse. The evidence indicates that it was only upon DHC's arrival on the job site on the day following the damaging rainstorm, that DHC assumed additional duties which extended to the installation of the tarpaper.

Plaintiff emphasizes that in order to install the trusses, the old roofs had to be removed, leaving the buildings unprotected. Thus, plaintiff argues the exposure of the roofs were part of the process undertaken by DHC as per DHC's original agreement with Neuse River. Although on the day of the storm, DHC assisted Neuse River to a limited extent in the removal of the old roofs and in the preparation for the installation of the new roofs, DHC's sole motivation for assisting in the removal was a desire to stay within the time allotted by contract for the installation of the trusses.

These actions do not establish that DHC assumed a duty to weatherproof the buildings. It was Neuse River that left the buildings exposed to the weather when it removed the rubber membrane without providing adequate protection in violation of its expressed contractual obligation. DHC did not assume any responsibility for laying the tarpaper, hence weatherproofing, until after the damage had occurred. Plaintiff's evidence is insufficient to create a genuine issue that DHC owed a duty to plaintiff to waterproof the buildings. Therefore, an essential element of plaintiff's claim is non-existent

and subsequently plaintiff has failed to present a *prima facie* case of negligence. The trial court did not err in granting summary judgment to DHC. Plaintiff's assignments of error numbers two and three are overruled.

**[3]** Plaintiff argues the trial court's order erred in granting DHC's motion to tax plaintiff with the costs of the action pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(d) (2003). Rule 3(d) of the North Carolina Rules of Procedure provides that the notice of appeal filed by the appellant "designate[s] the judgment or order from which appeal is taken[.]" "Without proper notice of appeal, the appellate court acquires no jurisdiction and neither the court nor the parties may waive the jurisdictional requirements even for good cause shown under Rule 2." *Bromhal v. Stott*, 116 N.C. App. 250, 253, 447 S.E.2d 481, 483 (1994), *disc. review denied*, 339 N.C. 609, 454 S.E.2d 246, *aff'd*, 341 N.C. 702, 462 S.E.2d 219 (1995). In the case before us, plaintiff failed to file notice of appeal from the trial court's order permitting costs to be taxed against plaintiff; therefore, this Court is without jurisdiction to consider this issue.

Having considered DHC's cross-assignments of error, this Court finds DHC's arguments to be without merit. DHC's cross-assignments of error numbers one and two are overruled.

Affirmed.

Judges HUDSON and CALABRIA concur.