STATE OF NORTH CAROLINA v. DWIGHT McDOUGALD

No. COA06-164

(Filed 2 January 2007)

**1. Appeal and Error— incomplete record—incomplete notice of appeal—guilty pleas without preservation of evidence issue**

Violations of the appellate rules resulted in dismissal of an assignment of error about the denial of a motion to suppress evidence, and Rule 2 was not invoked to hear the issue because, given the significant violations of the appellate rules, doing so would create an appeal. The record contained only a partial order, the notice of appeal did not designate the judgments and orders from which defendant appeals, and specifically did not refer to the order denying defendant's motion to suppress, and defendant pled guilty to two of the charges without preserving his issue as to those charges.

**2. Appeal and Error— preservation of issues—subsequent testimony admitted without objection—plain error not alleged**

There was no plain error in a prosecution for trafficking in ecstasy where a detective was allowed to testify about his two-year investigation of defendant. While the initial testimony was over defendant's objection, subsequent detailed testimony was without objection, and defendant did not specifically and distinctly allege plain error on appeal.

**3. Appeal and Error— preservation of issues—admission of audiotape—copy not provided to appellate court**

The issue of whether an audiotape was properly admitted was not preserved for appeal where defendant did not provide the court with a copy of the tape or of the transcript that accompanied the tape at trial. Moreover, one of the participants who

STATE v. McDOUGALD

[181 N.C. App. 41 (2007)]

was on the tape was subsequently allowed to testify without objection.

Judge ELMORE concurring in part and dissenting in part.

Appeal by defendant from judgments entered 12 April 2005 by Judge Jerry Cash Martin in Guilford County Superior Court. Heard in the Court of Appeals 19 October 2006.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General John P. Scherer, II, for the State.*

*Irving Joyner, for defendant-appellant.*

JACKSON, Judge.

On 7 July 2004, Dwight McDougald ("defendant") was arrested and subsequently indicted on charges of trafficking in methylene-dioxyamphetamine ("MDA"), trafficking by possessing MDA, and conspiracy to traffick MDA. Defendant was arrested, along with Kathryn Powell ("Powell"), in conjunction with an undercover drug sale coordinated by Detective Aaron Griffiths ("Griffiths") of the Greensboro Police Department.

Griffiths testified that prior to defendant's arrest in 2004, he had been investigating defendant for the previous two years. In April of 2004, Griffiths arrested Earl Jones ("Jones") for possession of marijuana and an assault rifle. Jones agreed to cooperate with Griffiths by providing information about drug dealers, drug deals, and other information, in return for assistance with Jones' pending federal prosecution. During his cooperation with Griffiths, Jones was told to contact Powell in order to set a date when Jones could purchase drugs from Powell. Powell's name had come up during Griffiths' investigation. Per Griffiths' instruction, Jones was to purchase 500 ecstasy, or MDA, pills from Powell. Powell testified that once contacted by Jones, she then contacted defendant to see if he could supply her with this amount of MDA. Powell stated that she and defendant discussed how much defendant would charge her for the pills and then how much she in turn could charge Jones in order for her to make a profit. Griffiths instructed Jones to set 7 July 2004 as the date for the sale; Jones contacted Powell and arranged for the drug sale to occur on that date.

On 7 July 2004, Griffiths arranged for Detective Duane James ("James") to participate in the undercover drug sale, by posing as

the individual providing the cash for the sale. Griffiths outfitted Jones with a body wire, which recorded the events of the drug sale, including the conversations between Powell, Jones, and James. Powell testified that just before the sale was to occur, defendant informed her that he only had 385 MDA pills, not the 500 to which he had initially agreed. Powell then informed Jones of the reduced amount.

Powell testified that defendant told her that on the day of the sale, that she was to contact him when Jones arrived, and that he would walk over to her place with the pills. She stated that defendant paid her prior to the actual sale, for her portion of the profit from the sale. At the time of the arranged sale, Jones arrived at the apartment complex where both Powell and defendant lived. Detective James rode separately from Jones, but arrived at the apartment complex at the same time. Jones called Powell to let her know that he was there, at which time she came downstairs and approached Jones' car. While Powell was talking with Jones, defendant was seen leaving his apartment and walking to Powell's apartment. During this time, Powell's daughter had come downstairs and began coming over to Powell. Powell then left Jones to take her daughter back up to her apartment so that defendant could watch her daughter, along with his own son. When Powell came back downstairs to Jones, he took her over to James, where he introduced James and the three of them set up the details of the sale.

Powell testified that she then went back upstairs to her apartment, where defendant gave her the MDA pills and explained to her how they were arranged in the bag. Powell then took the bag of pills downstairs, where she gave them to James in exchange for $3,000.00. As Powell attempted to return to the apartment complex, she was arrested by Griffiths. Griffiths, along with other officers, then went to Powell's apartment, where defendant was arrested.

Once defendant was placed under arrest, Griffiths asked defendant for consent to search his apartment, to which defendant repeatedly refused to give consent. Griffiths called defendant's wife, Chasity McDougald ("McDougald"), so that she could come to the apartment to get their son for whom defendant had been caring. Upon arriving at the scene, McDougald was informed about her husband's arrest, and was told that he had refused to give consent for officers to search the apartment that they shared. Griffiths testified that he asked McDougald if she would give her consent to allow the officers to search her apartment. He stated that she agreed, and that he then read a consent to search form to her, which she then signed.

Upon searching defendant's apartment, Griffiths and the other officers found a bag of marijuana, a bag of MDA pills, $9,480.00, and Inositol, which can be used to cut cocaine. Officers also found an additional $398.00 and a bag of marijuana during the search of defendant's person. Prior to trial, defendant filed a motion to suppress all of the evidence seized during the search of his apartment, arguing that due to his wife's high risk pregnancy at the time, she lacked the capacity to consent to the search. He also argued that once he had already refused consent, it was improper for Griffiths to then seek consent from his wife. Defendant's motion to suppress was denied following a hearing on the matter on 5 April 2005.

After their arrest, defendant and Powell were taken to the Guilford County Jail. Griffiths testified that when he interviewed Powell, she stated that she was delivering the pills for defendant, and that she was to make $200.00 for doing so. Griffiths then stated that while he was completing the necessary paperwork, defendant approached him and voluntarily said that Powell "was just going to make a little money for this. She don't know what she's doing or what's going on."

Following a trial on the three charges, a jury found defendant guilty of conspiracy to traffick by possessing 100 or more but less than 500 dosage units of MDA. The jury was unable to reach a unanimous verdict as to the remaining two charges. Defendant then entered guilty pleas to trafficking by possessing 100 or more but less than 500 dosage units of MDA and to sale of Schedule I substance, MDA. Defendant was sentenced to a term of thirty-five to forty-two months imprisonment for the offenses of trafficking by possessing and conspiracy to traffick. For the offense of sale of a Schedule I substance, MDA, defendant was given a suspended sentence of thirty-six months of supervised probation, which was ordered to begin at the expiration of his prison term. From his conviction, defendant appeals.

[1] Defendant first contends the trial court erred in denying his motion to suppress. However, we decline to address this issue due to the numerous violations of our appellate rules. Defendant's assignment of error is dismissed.

Rule 9 of the North Carolina Rules of Appellate Procedure requires an appellant to include in the record on appeal "copies of the . . . order, or other determination from which appeal is taken." N.C. R. App. P. 9(a)(3)(g) (2006). The record before this Court con-

tains the first two pages of the order denying defendant's motion, but it does not contain the portion of the order with the trial court's conclusions of law, date or signature of the trial judge. During oral argument, counsel for defendant represented to the Court that the record had been amended to include the complete order, when in fact this was not the case and no amendment had occurred. One week after this case was heard, defendant filed a motion to amend the record on appeal to include the complete order. We denied defendant's motion. As the appellant, defendant had the duty and responsibility to make sure the record on appeal filed with this Court was complete. *Hill v. Hill*, 13 N.C. App. 641, 642, 186 S.E.2d 665, 666 (1972). This Court's review of an appeal from the trial division "is solely upon the record on appeal." N.C. R. App. P. 9(a) (2006).

Defendant's Notice of Appeal also does not comply with our appellate rules, in that it fails to designate from which judgments and orders defendant appeals, and it specifically fails to reference the order denying his motion to suppress. *See* N.C. R. App. P. 3(d) (2006); *Finley Forest Condo. Ass'n v. Perry*, 163 N.C. App. 735, 741, 594 S.E.2d 227, 231 (2004) (" 'Without proper notice of appeal, the appellate court acquires no jurisdiction and neither the court nor the parties may waive the jurisdictional requirements even for good cause shown under Rule 2.' " (quoting *Bromhal v. Stott*, 116 N.C. App. 250, 253, 447 S.E.2d 481, 483 (1994), *aff'd*, 341 N.C. 702, 462 S.E.2d 219 (1995))). Based on the significant violations of our appellate rules, were this Court to invoke Rule 2 of our appellate rules to address this issue, we would be creating an appeal for defendant, and therefore violating *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005). *See Viar*, 359 N.C. at 402, 610 S.E.2d at 361 ("It is not the role of the appellate courts, however, to create an appeal for an appellant.").

Moreover, defendant was found guilty on only one charge, and pled guilty to two additional charges. North Carolina General Statutes, section 15A-979 provides that "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C. Gen. Stat. § 15A-979(b) (2005). However, "[t]his statutory right to appeal is conditional, not absolute." *State v. McBride*, 120 N.C. App. 623, 625, 463 S.E.2d 403, 404 (1995), *aff'd*, 344 N.C. 623, 476 S.E.2d 106 (1996). Defendant failed to preserve his appeal on this order at the time he pled guilty to two of the three charges, thus he has waived his appeal on the denial of the motion with respect to the

two charges to which he pled guilty. *See State v. Stevens*, 151 N.C. App. 561, 563, 566 S.E.2d 149, 150 (2002) (" '[A] defendant bears the burden of notifying the state and the trial court during plea negotiations of the intention to appeal the denial of a motion to suppress, or the right to do so is waived after a plea of guilty.' " (citation omitted)).

As defendant's appeal on this issue is not properly before this Court, we dismiss this assignment of error.

Defendant next contends the trial court erred in permitting one of the State's witnesses to testify regarding details of an ongoing investigation of purported, but uncharged, criminal activities of defendant which lead up to his arrest for the present charges. Specifically, defendant contends the trial court erred in permitting Detective Griffiths to testify that he had been investigating defendant for two years prior to his arrest. Defendant also contends the trial court erred in permitting an audio recording, and accompanying transcript, to be played for and published to the jury. Defendant argues that the recording, which contains only the voices of Powell, Detective James, and Jones, the informant, does not contain defendant's voice or any reference to defendant, and therefore was unduly prejudicial.

Rule 401 of the North Carolina Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). In criminal cases, "every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994). All determinations on the weight of such evidence are matters which are properly left to the jury. *State v. Smith*, 357 N.C. 604, 614, 588 S.E.2d 453, 460 (2003), *cert. denied*, 542 U.S. 941, 159 L. Ed. 2d 819 (2004). While a trial court's rulings on the relevancy of evidence are not discretionary, they are given great deference on appeal. *State v. Streckfuss*, 171 N.C. App. 81, 88, 614 S.E.2d 323, 328 (2005).

Evidence which is found to be relevant may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2005). "A trial court has discretion whether or not to exclude evidence under Rule 403, and a trial court's determination will only be disturbed upon

a showing of an abuse of that discretion." *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006) (citing *State v. Campbell*, 359 N.C. 644, 674, 617 S.E.2d 1, 20 (2005), *cert. denied*, 547 U.S. 1073, 164 L. Ed. 2d 523 (2006)).

**[2]** On appeal, defendant argues the trial court erred in allowing Detective Griffiths to present irrelevant testimony concerning his ongoing two-year investigation of defendant prior to defendant's arrest in April 2004, and of the detective's interactions with the informant and preparations for the undercover drug sale. Defendant contends not only was this testimony irrelevant, but also that its probative value was substantially outweighed by its prejudicial effect, and therefore it should have been excluded pursuant to Rule 403 of our Rules of Evidence.

Detective Griffiths testified, over defendant's objection, that he first became involved in the investigation that resulted in defendant's arrest in 2002. He then testified, without objection, that the investigation continued until the date of defendant's arrest in 2004, and that prior to the arrest of defendant, he had been doing surveillance at defendant's apartment complex. Detective Griffiths then went on to testify in detail, and without objection, concerning the criminal history of Jones, his preparation with Jones, and the details of setting up the undercover drug sale with Powell, the informant, and the other officers involved. Also, while cross-examining Detective Griffiths, defendant elicited additional testimony concerning the detective's two-year investigation of defendant and his surveillance activities of defendant.

Generally, a defendant must make a timely objection to proffered testimony in order to preserve the issue for appellate review, and when a defendant has failed to object this Court may only review the matter for plain error. N.C. R. App. P. 10(b)(1) and (c)(4) (2006); *State v. Barden*, 356 N.C. 316, 348, 572 S.E.2d 108, 130 (2002), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). Also, "[w]here evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984). Thus, as defendant has failed to preserve his appeal on the above testimony by either failing to object initially, or by failing to object when the same testimony was elicited later, this assignment of error may be reviewed only for plain error. However, because defendant did not "specifically and distinctly" allege plain error as required

STATE v. McDOUGALD

[181 N.C. App. 41 (2007)]

by Rule 10(c)(4) of our appellate rules, defendant is not entitled to plain error review of this issue. N.C. R. App. P. 10(c)(4) (2006).

[3] At trial, the State was permitted, over defendant's objection, to play for the jury an audiotape of the conversation between Powell and Jones, which was recorded by a body wire being worn by Jones. The audiotape also included brief statements by Detective James, the undercover officer, but did not include any statements made by defendant. While the audiotape was played for the jury, the jury was permitted to follow along with the audiotape by reading a transcript of the recording. The State contended that the audiotape and accompanying transcript corroborate the previous testimony given by Detectives James and Griffiths concerning the undercover drug sale.

Rule 9(d)(2) of the North Carolina Rules of Appellate Procedure requires that exhibits "offered in evidence and required for understanding of errors assigned shall be filed with the appellate court." N.C. R. App. P. 9(d)(2) (2006). As defendant has failed to provide this Court with either a copy of the audiotape or the accompanying transcript, we are unable to review the challenged exhibits to determine whether they were prejudicial in light of the testimony by Detectives James and Griffiths describing what occurred during the undercover drug sale. "[D]efendant has failed to bring forward a record sufficient to allow proper review of this issue and has failed to overcome the presumption of correctness at trial." *State v. Ali*, 329 N.C. 394, 412, 407 S.E.2d 183, 194 (1991). We also note, that subsequent to the playing of the audiotape, Powell was permitted, without objection, to testify not only about her repeated conversations with defendant in preparation for the undercover drug sale, but also about the events of the sale itself. Therefore, we hold this assignment of error is without merit.

No error.

Chief Judge MARTIN concurs.

Judge ELMORE concurs in part; dissents in part in a separate opinion.

ELMORE, Judge, concurring in part and dissenting in part.

I concur in the majority opinion that there was no error in defendant's convictions of the crimes to which he entered guilty pleas (traf-

ficking by possessing 100 or more but less than 500 dosage units of MDA and for sale of Schedule I substance, MDA). However, I respectfully dissent from that part of the majority opinion upholding defendant's jury conviction of conspiracy to traffic by possessing 100 or more but less than 500 dosage units of MDA. I would address on the merits defendant's contention that the trial court erred in denying defendant's motion to suppress, rather than dismissing it based on rules violations. Accordingly, because I believe that the trial court erred in its denial of defendant's motion, I would vacate defendant's conviction of conspiracy to traffic by possessing 100 or more but less than 500 dosage units of MDA.

Preliminarily, I would note that while the complete order is not in the record, the trial court's findings and conclusions appear in the transcript at pages 18-21. It is true that the notice of appeal does not reference the order denying the motion to suppress. However, this issue was argued vigorously before this Court at oral arguments, and the panel responded with questions directed to this issue. I agree with a recent dissent by Judge Geer, who wrote that "the proper line is to dismiss only those appeals that substantively affect the ability of the appellee to respond and this Court to address the appeal." *Stann v. Levine*, 180 N.C. App. 1, 16, 636 S.E.2d 214, 223 (2006) (Geer, J., dissenting). Given that, in my view, the State practically conceded the unconstitutionality of the search at oral arguments, I would invoke Rule 2 of our Rules of Appellate Procedure to avoid manifest injustice and address this issue on its merits. N.C.R. App. P. Rule 2 (2006) ("To prevent manifest injustice to a party . . . [an appellate court] may . . . suspend or vary the requirements or provisions of any of [the] rules[.]").

Defendant essentially argues that a recent United States Supreme Court decision establishes that his Fourth Amendment rights were violated. *Georgia v. Randolph*, 547 U.S. 103, 164 L. Ed. 2d 208 (2006). In *Randolph*, the majority held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120, 164 L. Ed. 2d at 226.

Indeed, the State concedes that *Randolph* applies. It argues, however, that the error was harmless. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen.

Stat. § 15A-1443(b) (2005). "[T]he question is 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *State v. Soyars*, 332 N.C. 47, 58, 418 S.E.2d 480, 487 (1992) (quoting *Chapman v. California*, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710 (1967)) (internal quotations omitted).

It is true that "[o]verwhelming evidence of guilt may render constitutional error harmless." *State v. Thompson*, 118 N.C. App. 33, 42, 454 S.E.2d 271, 276 (1995) (citation omitted). The State contends that it provided such "overwhelming evidence" in this case. However, aside from the MDA and ecstacy found in defendant's apartment, the only evidence that tended to show his guilt was the testimony of police officers and Powell. The officers in question were not witnesses to the interaction between Powell and defendant on the date in question, nor were they privy to the phone conversations regarding the set-up of the drug deal. Powell testified against defendant at trial as part of her own plea deal. This evidence simply does not rise to the level of "overwhelming evidence." The discovery of MDA and ecstacy in the apartment was clearly a major part of the case against defendant that "contributed to [his] conviction." *Soyars*, at 58, 418 S.E.2d at 487. I would therefore hold that the error was not harmless beyond a reasonable doubt.

I would address on the merits defendant's contention that the trial court erred in denying defendant's motion to suppress. Having done so, I would hold that defendant's Fourth Amendment rights were violated, and that the trial court erred in its denial of defendant's motion. Accordingly, I would vacate defendant's conviction of conspiracy to traffic by possessing 100 or more but less than 500 dosage units of MDA, and grant him a new trial on that charge.