STATE OF NORTH CAROLINA v. MELDON COLUMBUS COLLINS, JR.

No. 69A93

(Filed 4 March 1994)

1. Homicide § 135 (NCI4th) — first-degree murder — short-form indictment — sufficient

There was no error in a first-degree murder prosecution where the indictment complied with the short form indictment for murder authorized by N.C.G.S. § 15-144 and was identical, except for the name of the victim, to the indictments approved in State v. Harris, 323 N.C. 112, and State v. Avery, 315 N.C. 1.

Am Jur 2d, Indictments and Informations §§ 2, 66-69, 82.

2. Evidence and Witnesses § 221 (NCI4th) — first-degree murder of spouse — failure to provide support for children following wife's death — admissible

The trial court did not abuse its discretion when trying defendant for the first-degree murder of his wife by allowing the prosecutor to question defendant about his failure to provide financial support to his children following his wife's death where the State sought on cross-examination to rebut the defendant's testimony regarding his loving relationship with his wife and children. Evidence tending to show that the defendant did not support his children and did not send them gifts following his wife's death tended to shed light upon the circumstances surrounding the shooting and was relevant and admissible; furthermore, defendant was not unfairly prejudiced by the introduction of the evidence and similar evidence was already

before the jury without objection in the form of testimony that defendant failed to act responsibly to support his family prior to the shooting. N.C.G.S. § 8C-1, Rules 401, 403.

**Am Jur 2d, Evidence § 278.**

3. **Evidence and Witnesses §§ 1113, 757 (NCI4th)— first-degree murder of spouse—statements by defendant to co-worker—admissible**

The trial court did not err when trying defendant for the first-degree murder of his wife by allowing the State to question defendant about statements he had made to a co-worker in which he allegedly threatened to kill his wife. The prosecutor only once even arguably referred to a statement by the co-worker and there was no prejudice from that statement because there was plenary other evidence that defendant had threatened his wife's life on a number of occasions prior to shooting her. The defendant's comments concerning his own statements, to the extent they were hearsay, fall within the exception to the hearsay rule for admissions by a party opponent. N.C.G.S. § 8C-1, Rule 801(d)(A).

**Am Jur 2d, Evidence § 611; Homicide § 337.**

4. **Homicide §§ 251, 252 (NCI4th)— first-degree murder—premeditation and deliberation—evidence sufficient**

The evidence in a first-degree murder prosecution was sufficient to submit first-degree murder to the jury on the theory of premeditation and deliberation where the evidence tended to show previous ill will or difficulty between defendant and his wife, the victim; defendant had threatened to kill his wife on a number of occasions prior to her death; defendant loaded the murder weapon the night before the shooting, the same night the victim called her father, sounding upset; defendant gave conflicting accounts to police of the events surrounding his wife's death; an SBI agent testified that the gun required more than fifteen pounds of pressure to fire if the hammer was not cocked; and defendant had served in the military on active duty or in a reserve capacity from 1983 until his wife's death and frequently went hunting, evidence tending to indicate that he knew what was necessary to fire the pistol.

**Am Jur 2d, Homicide §§ 437, 439.**

## STATE v. COLLINS

[335 N.C. 729 (1994)]

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment entered by Griffin, J., on 14 September 1992, in the Superior Court, Craven County, sentencing the defendant to life imprisonment for first-degree murder. Heard in the Supreme Court on 18 November 1993.

*Michael F. Easley, Attorney General, by Mary Jill Ledford, Assistant Attorney General, for the State.*

*Rudolph A. Ashton, III for the defendant-appellant.*

MITCHELL, Justice.

On 12 November 1991, a Craven County Grand Jury indicted the defendant, Meldon Columbus Collins, Jr., for first-degree murder. He was tried noncapitally at the 8 September 1992 Criminal Session of Superior Court, Craven County. The jury returned a verdict finding the defendant guilty of premeditated and deliberate first-degree murder. The trial court sentenced the defendant to life imprisonment. The defendant appealed to this Court as a matter of right from the judgment sentencing him to life imprisonment for first-degree murder. *See* N.C.G.S. § 7A-27(a) (1989).

The evidence presented at the defendant's trial tended to show the following. Around 1:00 p.m. on 9 October 1991, the defendant shot his wife, April Collins, in the head with a .22-caliber pistol. The defendant claimed that the shooting was an accident. He testified that on the afternoon of the shooting, he and April were eating lunch in their mobile home, located in the Havelock area of Craven County. The defendant was sitting in a chair and April was sitting across from him on a weight bench. The pistol was in a gym bag beside the defendant's chair. He had loaded the pistol the previous night. The defendant testified that April said to him, "Mel, you said that we were going to shoot the gun today." The defendant then reached down into the bag and removed the gun. He "swung the gun up from the bag" and straightened out his arm. He then "heard a pop" and saw April fall from the weight bench. Although the defendant admitted that he had his finger on the trigger, he insisted that he did not intend to shoot. He explained that he also owned a .44-caliber handgun which would not fire unless the hammer was cocked. It was therefore his practice to pull the .44-caliber handgun out of its holster with his finger on the trigger. He claimed that he had never fired the .22-caliber pistol and thus did not realize that it would fire just by pulling the trigger.

STATE v. COLLINS

[335 N.C. 729 (1994)]

Other evidence introduced at trial, however, tended to show that the shooting was not an accident. The defendant's stepson (and April's biological son), Chris Mock, testified that April and the defendant often argued and that on one occasion, the defendant had put a gun to April's head and threatened to kill her. Similarly, the defendant admitted to police that he had pointed a gun at April and threatened to "blow her ass away" six or seven times. Further, Velma Gossip, a neighbor and co-worker of the defendant, testified that the defendant had told her that April had allowed one of his dogs to "get killed" and that he "ought to have killed her" for allowing it to happen.

Other evidence tended to show that April and the defendant had been arguing the night before the murder and just prior to the shooting. April's father testified that April had called him the night before her death and had sounded upset. Another of the defendant's neighbors, Charles Mason, told police that he had overheard an argument coming from the defendant's mobile home moments before the shooting. Finally, an SBI agent who examined the murder weapon testified that the pistol was working properly and that one would have to apply fifteen to sixteen pounds of pressure to the trigger to fire the pistol when the hammer was not cocked.

Other pertinent evidence is discussed at other points in this opinion where it is relevant.

[1] By his first assignment of error, the defendant contends that the indictment for first-degree murder was fatally defective in that it did not allege each essential element of the offense of first-degree murder. The true bill of indictment returned against the defendant included the following:

The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously and of malice aforethought did kill and murder April Collins.

The indictment complies with the short form indictment for murder authorized by N.C.G.S. § 15-144 and is identical, except for the name of the victim, to the indictments approved by this Court in cases such as *State v. Harris*, 323 N.C. 112, 120, 371 S.E.2d 689, 694 (1988), and *State v. Avery*, 315 N.C. 1, 12-14, 337 S.E.2d

STATE v. COLLINS

[335 N.C. 729 (1994)]

786, 792-93 (1985). We have considered the defendant's arguments and have found no compelling reason to depart from our prior holdings in *Harris* and *Avery*, which the defendant correctly recognizes as dispositive. The trial court did not err in denying the defendant's motions to suppress the indictment and to dismiss the charge against the defendant. This assignment of error is without merit.

[2] The defendant argues by his second assignment of error that the trial court erred in allowing the prosecutor to question him about his failure to provide financial support to his children following his wife's death. On direct examination, the defendant testified at length about the nature of his relationship with April and their children. He stated that when he was not working, he attended church with his family and that he regularly took the family on fishing trips. He also explained that he was a certified little league football coach and coached his stepson, Chris Mock. He further testified that when he returned from military duty overseas in 1991, he remained at home for thirty days in order to spend time with his family. Finally, at the close of his direct examination, the defendant testified that he loved April and their children.

On cross-examination, the State sought to rebut the defendant's testimony regarding his loving relationship with his wife and children. The prosecutor began by asking the defendant what he had given one of his children for Christmas in 1991. The defendant's counsel objected and the trial court sustained the objection. Out of the presence of the jury, the prosecutor argued that evidence tending to show "how [the defendant] has treated his family bears directly on the decision this jury will make as to his intent on the day he shot his wife." The trial court allowed the prosecutor to continue his cross-examination of the defendant, but told the prosecutor, "I think you can come up with a little better question." The prosecutor then resumed his cross-examination as follows:

[PROSECUTOR]: Mr. Collins, you haven't done a thing for your children since the death of your wife, have you?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[DEFENDANT]: No, according to my bond.

[PROSECUTOR]: Well, can you read this bond and tell me anywhere in here where it says you cannot send money for your children's support or you cannot send them presents?

. . . .

[PROSECUTOR]: Take this red pen and underline . . . those conditions in your bond where it says you cannot send any child support to your children.

[DEFENDANT]: It's not up here.

[PROSECUTOR]: Underline where it says you cannot send them any presents for Christmas or for their birthday.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[DEFENDANT]: It's not up here.

[PROSECUTOR]: But you haven't given them the first thing since you shot and killed their mother, have you?

[DEFENSE COUNSEL]: Objection.

[DEFENDANT]: No. I was asked not to.

THE COURT: Overruled.

The defendant insists that the trial court erred by overruling his objections to these questions because (1) this information was not relevant, and (2) any probative value it did possess was substantially outweighed by its prejudicial effect. We do not agree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). As a general rule, "[a]ll relevant evidence is admissible." N.C.G.S. § 8C-1, Rule 402 (1992). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). The decision whether to exclude relevant evidence under Rule 403 "is a matter left to the sound discretion of the trial court." *State*

STATE v. COLLINS

[335 N.C. 729 (1994)]

*v. Stager*, 329 N.C. 278, 308, 406 S.E.2d 876, 893 (1991). Here, we find no abuse of discretion by the trial court.

We have interpreted Rule 401 broadly and have explained on a number of occasions that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible. *Id.* at 302, 406 S.E.2d at 890; *see also State v. Riddick*, 316 N.C. 127, 137, 340 S.E.2d 422, 428 (1986).

In the present case, evidence tending to show that the defendant did not support his children and did not send them gifts following his wife's death tended to shed light upon the circumstances surrounding the shooting. *See Stager*, 329 N.C. at 321-22, 406 S.E.2d at 901 (evidence that the defendant disposed of her husband's personal effects the day after his funeral tended to shed light upon the circumstances surrounding the defendant's shooting of her husband and thus was relevant and admissible). Specifically, it tended to rebut the defendant's characterization of his relationship with his wife and children as a caring, supportive one. It was therefore relevant and admissible. *Id.*

Further, the trial court did not err in concluding that the probative value of this evidence was not outweighed by any of the considerations set forth in Rule 403. The defendant was not unfairly prejudiced by the introduction of this evidence. The evidence was relevant and highly probative. Additionally, similar evidence was already before the jury in the form of the testimony of James Willis Mock. Mr. Mock testified on direct examination that he had purchased the mobile home in which the defendant and April were living at the time of her death and that the mobile home was located behind his house. He further testified that April and the defendant had lived in another mobile home during the first year of their marriage. April and her children subsequently moved out of the mobile home they shared with the defendant and into the mobile home purchased by Mr. Mock. During the time that April lived there without the defendant, Mr. Mock helped support her and her children. Even when the defendant returned to live with April and the children one year later, Mr. Mock did not charge them rent and he helped them pay their utility bills. He also provided April and the defendant with an automobile on which he paid the insurance. On cross-examination, Mr. Mock testified that the defendant did not pay any part of his family's bills and that "[a]ll [the defendant] did was [buy] guns, knives, [and] dogs." This evidence

tended to show that the defendant had failed to act responsibly to support his family prior to the shooting and was elicited without objection from the defendant. The defendant has failed to show that the trial court abused its discretion under Rule 403. We reject this assignment of error.

[3]  By his third assignment of error, the defendant maintains that the trial court erred in allowing the State to question him about statements he had made to a co-worker, Sharon Smoot. The prosecutor cross-examined the defendant with regard to Ms. Smoot as follows:

[PROSECUTOR]: And you know a lady by the name of Sharon Smoot?

[DEFENDANT]: Sharon Smoot.

. . . .

[PROSECUTOR]: Is that a girl you work with?

[DEFENDANT]: Yes.

. . . .

[PROSECUTOR]: All right. And she's heard, as people heard you, you had threatened to kill your wife at work before, didn't you?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[DEFENDANT]: Repeat the question, please.

[PROSECUTOR]: You had threatened to kill your wife before you killed her, didn't you?

[DEFENDANT]: Well, some time ago when I may have said it.

[PROSECUTOR]: You think it's a joke to tell people you're thinking about killing your wife?

[DEFENDANT]: No, at that time we was joking. I mean a long time ago, we was joking. You say without thought.

. . . .

[PROSECUTOR]: Now, when you talked to Sharon on one occasion, didn't you have a conversation in which she asked you

if you didn't owe your children and Mr. Mock an explanation about what had happened?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[DEFENDANT]: I don't recall when I talked to her about it[.] [B]asically I talked to her about being saved, you know, about the Bible.

[PROSECUTOR]: Didn't you tell her that no, you didn't, that it was all a burden to start with but the Lord took the burden away and you didn't owe the children an explanation and you didn't owe her daddy an explanation?

[DEFENDANT]: No, sir, probably something she probably said. It wasn't in my statement.

[PROSECUTOR]: Isn't that what you said[,] that April and your family w[ere] a burden to you and that the Lord had taken the burden off your shoulders?

[DEFENDANT]: No, I never said that.

[PROSECUTOR]: Never said anything like that—

[DEFENDANT]: I never said that my family was a burden to me, no.

[PROSECUTOR]: The family that you've done so much for since you shot your wife?

[DEFENDANT]: I never said that my family was a burden to me.

[PROSECUTOR]: Did you ever say something like that?

[DEFENDANT]: I know I never said that my family was a burden to me—

[PROSECUTOR]: Okay.

[DEFENDANT]: Never.

[PROSECUTOR]: What did you say?

[DEFENDANT]: I don't know.

The defendant contends that by overruling his objections, the trial court improperly allowed the State to elicit inadmissible hearsay

statements made by Sharon Smoot. He therefore insists he is entitled to a new trial. We disagree.

Only once did the prosecutor even arguably refer to a statement made by Ms. Smoot. Assuming *arguendo*, however, that the State elicited a hearsay statement made by Sharon Smoot, the defendant still must show that there is a reasonable possibility that a different result would have been reached at trial had this error not occurred. *See State v. Hickey*, 317 N.C. 457, 473, 346 S.E.2d 646, 657 (1986); *see also* N.C.G.S. § 15A-1443(a) (1988). The defendant has failed to satisfy this burden. As previously noted in this opinion, there was plenary other evidence that the defendant had threatened April Collins' life on a number of occasions prior to shooting her. There was also considerable other evidence tending to show that the shooting was not an accident. The defendant therefore has not shown that there is a reasonable possibility that the result would have been different had the prosecutor not mentioned Sharon Smoot's statement.

The remainder of the colloquy was expressly limited to statements made by the defendant himself, not Ms. Smoot. The defendant's comments concerning his own statements, to the extent they were hearsay, fall within the exception to the hearsay rule for admissions by a party opponent. N.C.G.S. § 8C-1, Rule 801(d)(A) (1992). This assignment of error therefore is without merit.

[4] By his fourth and final assignment of error, the defendant argues that the evidence was insufficient to support submission of first-degree murder to the jury on the theory of premeditation and deliberation. We disagree.

We have often stated in detail the rules to be applied in determining whether evidence introduced at trial will support submission of a charged offense to the jury. *E.g., State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991); *State v. Smith*, 300 N.C. 71, 265 S.E.2d 164 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). When "measuring the sufficiency of the evidence, all evidence admitted, whether competent or incompetent, must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence and resolving in its favor any contradictions in the evidence." *State v. Williams*, 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993). A defendant's motion to dismiss "is properly denied if the evidence, when viewed in the above light, is such that a rational trier of fact

could find beyond a reasonable doubt the existence of each element of the crime charged." *Id. See also State v. Sumpter*, 318 N.C. 102, 107-08, 347 S.E.2d 396, 399 (1986); *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

With regard to the elements of premeditated and deliberate murder, "premeditated" means that "the defendant contemplated killing for some period of time, however short, before he acted." *Williams*, 334 N.C. at 447, 434 S.E.2d at 592. A killing is "deliberate" if "the defendant acted 'in a cool state of blood,' free from any 'violent passion suddenly aroused by some lawful or just cause or legal provocation.' " *Id.* (quoting *State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985) ). Premeditation and deliberation "are not ordinarily subject to proof by direct evidence, but must generally be proved . . . by circumstantial evidence." *State v. Williams*, 308 N.C. 47, 68-69, 301 S.E.2d 335, 349, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983). Circumstances tending to prove that the killing was premeditated and deliberate include, but are not limited to:

> (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*Id.* at 69, 301' S.E.2d at 349.

Viewed in the light most favorable to the State, there was sufficient evidence from which a rational trier of fact could find in the present case that the defendant murdered his wife after premeditation and deliberation. The evidence tended to show that there was previous ill will or difficulty between the defendant and his wife. Chris Mock, the defendant's stepson, testified that April and the defendant frequently argued and that, on one occasion, the defendant had placed a gun to April's head and threatened to kill her. The defendant himself admitted to police that he had pointed a gun at April and threatened to "blow her ass away" six or seven times. Further, Velma Gossip, a neighbor and co-worker of the defendant, testified that the defendant had told her that April had allowed one of the defendant's dogs to "get killed"

and that he "ought to have killed her" for allowing it to happen. Finally, April's father testified that April had called him the night before the shooting and had sounded upset.

Evidence of the defendant's conduct before and after the killing also supports the inference that the defendant acted after premeditation and deliberation. As previously noted, the defendant had threatened to kill his wife on a number of occasions prior to her death. Further, the defendant loaded the murder weapon the night before the shooting—the same night on which April called her father sounding upset. In the hours after the shooting, the defendant gave conflicting accounts to police of the events surrounding his wife's death.

Other circumstances also tended to show the defendant's premeditation and deliberation. An SBI agent who examined the murder weapon testified that the pistol was working properly and that one would have to apply more than fifteen pounds of pressure to the trigger to fire the pistol if the hammer was not cocked. In addition, the defendant served in the military, either on active duty or in a reserve capacity, from 1983 until his wife's death. This, along with evidence that the defendant frequently went hunting, tended to indicate that the defendant knew what was necessary to fire the .22-caliber pistol.

We therefore conclude that the evidence in this case, taken as a whole and in the light most favorable to the State, was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the defendant, maliciously and after premeditation and deliberation, murdered his wife, April Collins. The trial court thus did not err in denying the defendant's motions at the close of the State's evidence and at the close of all the evidence to dismiss the charge of first-degree murder. We therefore reject this assignment of error.

For the foregoing reasons, we hold that the defendant received a fair trial free of prejudicial error.

NO ERROR.