STATE OF NORTH CAROLINA v. JOHNNY SHANE CURRY

No. COA04-776

(Filed 19 July 2005)

**1. Appeal and Error— preservation of issues—no objection at trial**

Defendant did not preserve for appeal issues concerning letters written by a codefendant where he did not move to redact or exclude the letters or object to their admission.

**2. Appeal and Error— plain error—properly argued**

Defendant properly argued plain error in the admission of letters from a codefendant, warranting appellate review of an otherwise unpreserved assignment of error.

**3. Evidence— letters from codefendant—admission not prejudicial**

Defendant did not demonstrate plain error in the admission of portions of letters from a codefendant. The State offered separate and overwhelming testimonial and physical evidence of defendant's guilt.

**4. Criminal Law— question by judge—no indication of opinion**

The court's question to a witness did not constitute prejudicial error where the court clarified a line of questions about a pertinent fact and did not comment on the credibility of the witness or his testimony. Moreover, the court instructed the jury that the

judge is required to be impartial, that it should not infer that he was implying that evidence or facts were or were not proven, and that the jury alone finds the facts.

**5. Conspiracy— felony murder—specific intent**

The trial court did not err by submitting to the jury conspiracy to murder under the felony murder rule. The court's instruction required the jury to find an agreement and specific intent to kill and eliminated the possibility that an unintentional felony murder formed the basis for the specific intent underlying the conspiracy.

**6. Constitutional Law— ineffective assistance of counsel— overwhelming evidence of guilt**

There was no prejudice from any ineffective assistance of counsel in the admission of letters from a codefendant in a prosecution for assault, breaking and entering, and other crimes. The State presented overwhelming testimonial and physical evidence of defendant's guilt.

Judge WYNN concurring in the result.

Appeal by defendant from judgments entered 16 January 2004 by Judge Michael E. Helms in Wilkes County Superior Court. Heard in the Court of Appeals 8 March 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Jeffrey R. Edwards, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for defendant-appellant.*

TYSON, Judge.

Johnny Shane Curry ("defendant") appeals from judgments entered after a jury returned guilty verdicts for: (1) assault with a deadly weapon with intent to kill inflicting serious injury; (2) felonious breaking or entering; (3) felonious larceny; (4) robbery with a dangerous weapon against Lloyd Triplett ("Triplett"); (5) felonious conspiracy to commit first-degree murder under the felony murder rule; (6) felonious conspiracy to commit robbery against Ruth's Ice Cream and Sandwich Shop ("Ruth's"); (7) felonious conspiracy to commit robbery with a dangerous weapon against Triplett; and (8) attempted murder. We find no error.

STATE v. CURRY

[171 N.C. App. 568 (2005)]

I. Background

Defendant, twenty-nine years old, and Danielle Edsel ("Edsel"), seventeen years old, were dating in February 2003. Triplett operated Wood's Grocery Store ("Wood's") and lived in a house next door. Triplett had known Edsel since she was a child and allowed her to live in a small apartment in the back of Wood's Grocery. He also gave her money and food and permitted her to use his bathroom when those at Wood's were not working. Edsel also occasionally worked for Triplett at Wood's.

The State's evidence tended to show that defendant and Edsel were seeking money. They discussed robbing Ruth's, where Edsel formerly worked. However, on the day they planned to rob Ruth's, bad weather had forced Ruth's to close early and they could not get inside the store.

Defendant and Edsel next planned to rob Triplett. They discussed several options to steal Triplett's money. The first option involved Edsel seducing Triplett, tying him to the bed, then forcing him to tell them where he kept his money. However, they determined that plan would allow Triplett to identify both of them.

The next plan involved Edsel knocking Triplett out at his house with defendant coming in and killing him. However, Edsel later determined that she would kill Triplett, so defendant would not "be the one to live with it."

On the evening of 16 February 2003, Edsel approached Triplett as he was working at Wood's and asked if she could use his bathroom. He agreed and the two walked from Wood's to Triplett's house. Triplett cooked dinner while Edsel showered. The two ate together, drank liquor, and watched television. Triplett asked Edsel if she wanted to spend the night. She agreed and Triplett left the house to move Edsel's car behind Wood's. After Triplett left, Edsel called defendant and asked him to come over to complete the robbery. When defendant hesitated, Edsel told him to "never mind," that she would call him later.

Triplett returned home after moving Edsel's car and the two talked for a while. At about 11:00 p.m., Triplett heard someone knocking on the door and went to answer it. Edsel, believing defendant was at the door, panicked and grabbed a gun she had hidden underneath the sofa. She aimed and shot Triplett in the back of the head. Triplett was knocked unconscious by the bullet and collapsed.

Defendant came inside Triplett's house and began searching for money. He went to Triplett's room and discovered another gun, which he stole. Edsel and defendant also grabbed some jewelry and another gun. Edsel checked Triplett and determined he was still alive. She was about to shoot him again when defendant stopped her. As Triplett regained consciousness, defendant and Edsel told him that someone had hit him on the head. Defendant advised Triplett to go to the hospital, but he refused. Edsel and defendant asked Triplett where he kept his money. Triplett claimed his niece held it all.

Defendant stayed with Triplett while Edsel went to Wood's to look for money. She broke open video poker machines and stole all of the quarters, but could not find additional cash. Edsel returned to Triplett's house and she and defendant attempted to cut the phone lines to Triplett's house. Defendant then left to search Wood's for money. Triplett still refused to go to the hospital. Edsel walked out of Triplett's house for a moment to get away from him. Triplett locked Edsel out of the house and called the police and his sister. Defendant returned to the house and he and Edsel asked Triplett to let them back inside. Triplett refused and informed them that he had called the police and his sister.

Defendant and Edsel returned to Wood's. Defendant broke open another video poker machine, stole cigarettes, and other items. They gathered the stolen goods into several bags and placed them inside Edsel's car. Both entered the vehicle, which they started to defrost the windows.

Wilkes County Sheriff's deputies were dispatched to Triplett's house in response to the 911 call. They arrived and saw Edsel's car parked behind Wood's. Triplett told the deputies that someone had knocked him unconscious. When he regained consciousness, he observed defendant and Edsel going through his things. The deputies approached Edsel's car and asked Edsel if they could search the vehicle. Edsel consented to the search. The deputies recovered two guns, a large quantity of cigarette cartons, bags of jewelry, and cash. When asked about these items, defendant and Edsel responded that they did not know how the items got into the car.

Triplett was taken to Wilkes Regional Medical Center and was treated for a gunshot wound to the head. The bullet fractured Triplett's skull and he was transferred to Baptist Hospital in Winston-Salem. He underwent neurosurgery to treat the gunshot wound and skull fracture.

On 14 April 2003 and 8 December 2003, the grand jury of Wilkes County returned true bills of indictment against defendant for: (1) assault with a deadly weapon with intent to kill inflicting serious injury; (2) felonious breaking and entering; (3) felonious larceny; (4) robbery with a dangerous weapon against Triplett; (5) felonious conspiracy to commit first-degree murder under the felony murder rule; (6) felonious conspiracy to commit robbery against Ruth's; (7) felonious conspiracy to commit robbery with a dangerous weapon against Triplett; and (8) attempted murder.

### A. Defendant's Evidence

Defendant was tried by a jury during the 12 January 2004 Criminal Session of Wilkes County. Defendant offered evidence from a fellow inmate of Edsel that she had planned the entire event and intended on having sex with Triplett in exchange for money. This testimony tended to show that after Edsel engaged in sexual intercourse, Triplett did not pay her and she shot him. The fellow inmate also testified Edsel stated she did not contact or involve defendant until after she had shot Triplett. Defendant did not testify.

### B. Verdict and Sentence

On 16 January 2004, the jury found defendant to be guilty of all charges. The trial court arrested judgment on the charge of conspiracy to commit robbery with a dangerous weapon (03 CRS 50657) and consolidated the verdicts for the charges of felonious larceny (03 CRS 50656) and felonious breaking and entering (03 CRS 50656). During sentencing, defendant was found to have a prior record level of III. Defendant was sentenced in the presumptive range for all charges, the following to run consecutively: (1) 220 months minimum to 273 months maximum for attempted murder; (2) 116 months minimum to 149 months maximum for assault; (3) 220 months minimum to 273 months maximum for conspiracy to commit murder; (4) 103 months minimum to 133 months maximum for armed robbery; and (5) ten months minimum to twelve months maximum for breaking and entering. Defendant was also sentenced for a concurrent term of ten months minimum to twelve maximum for conspiracy to commit robbery. Defendant appeals.

### II. Issues

Defendant argues: (1) the trial court erred in admitting into evidence letters written between defendant and Edsel; (2) the trial court erred in posing a question to a defense witness; (3) he was improperly

charged for conspiracy to commit felony murder; and (4) defendant received ineffective assistance of counsel.

### III. Admissibility of Letters

Defendant argues the trial court committed plain error by failing to edit or redact highly prejudicial portions from letters written by defendant and Edsel and later admitted into evidence at trial. We disagree.

#### A. Preservation of Potential Error for Appellate Review

[1] Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure requires:

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. Any such question which was properly preserved for review by action of counsel taken during the course of proceedings in the trial tribunal by objection noted or which by rule or law was deemed preserved or taken without any such action, may be made the basis of an assignment of error in the record on appeal.

N.C.R. App. P. 10(b)(1) (2004). Assignments of error are generally not considered on appellate review unless an appropriate and timely objection was entered. *State v. Short*, 322 N.C. 783, 790, 370 S.E.2d 351, 355 (1988) (citing *State v. Reid*, 322 N.C. 309, 367 S.E.2d 672 (1988)); N.C. Gen. Stat. § 15A-1446(a) (2003).

Our review of the transcripts and record fails to show that defendant moved to redact portions of or exclude the letters or made a timely and specific objection when the State proffered the letters and Edsel's corroborating testimony into evidence. Defendant had access to the letters prior to trial, knew the State intended to introduce them, but failed to request the trial court to edit the allegedly prejudicial portions. Under Rule 10(b)(1), defendant failed to preserve this assignment of error for review.

#### B. Plain Error Rule

[2] Our Supreme Court adopted the plain error rule as an exception to Rule 10 in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983)

(applied to assignments of error regarding jury instructions). A defendant seeking plain error review must "specifically and distinctly contend[]" that any error committed by the trial court amounted to plain error. *State v. Nobles*, 350 N.C. 483, 514-15, 515 S.E.2d 885, 904 (1999). The proponent must show that:

> [A]fter reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). We may only apply the plain error rule in exceptional cases. *State v. Sams*, 317 N.C. 230, 241, 345 S.E.2d 179, 186 (1986) (citation omitted). Our Supreme Court has extended plain error review to issues concerning admissibility of evidence. *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983).

We examine the entire record to decide whether the error "had a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 379 (citation omitted). We determine whether, absent the error, the jury would have returned a different verdict. *State v. Riddle*, 316 N.C. 152, 161, 340 S.E.2d 75, 80 (1986). Defendant properly argued in his brief with citations to relevant authority that the admission of portions of the letters constitutes plain error, warranting this Court's review of an otherwise unpreserved assignment of error.

## C. Relevant Evidence

[3] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2003). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact at issue." *State v. Sloan*, 316 N.C. 714, 724, 343 S.E.2d

527, 533 (1986) (citations omitted). Our Supreme Court has "interpreted Rule 401 broadly and [has] explained on a number of occasions that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994) (citations omitted).

Generally, all relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (2003). However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2003). Exclusion or admission of evidence under Rule 403 rests within the sound discretion of the trial court. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986).

Here, defendant asserts the following portions of the letters read into evidence and Edsel's testimony were highly prejudicial: (1) Edsel's opinion that defendant was guilty of felony larceny and felony breaking and entering; (2) defendant had prior criminal convictions; (3) defendant had previously been incarcerated; (4) defendant threatened to assault Edsel; (5) defendant advised Edsel how to pass a gunshot residue test; (6) defendant had no intention of testifying or taking a plea offer; (7) defendant thought a "fixer" was the only means to prevent his conviction; (8) defendant thought he had a "piss-poor" lawyer; and (9) defendant knew of "things that can be done" to get shorter sentences.

Our review of these instances set out in the transcript and the entire record indicate absent this evidence, the jury would not have returned a different verdict. *Riddle*, 316 N.C. at 161, 340 S.E.2d at 80. The State proffered separate and overwhelming testimonial and physical evidence against defendant to prove his guilt. Defendant has failed to show any alleged error in permitting introduction of the above evidence was "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quotation omitted). Under the other evidence presented, defendant has failed to show this is the exceptional case where the claimed error is so fundamental that justice was not done. *Sams*, 317 N.C. at 241, 345 S.E.2d at 186. This assignment of error is overruled.

**STATE v. CURRY**

[171 N.C. App. 568 (2005)]

## IV. Trial Court's Question

**[4]** Defendant asserts the trial court committed prejudicial error by asking a defense witness a question. We disagree.

Here, defendant was arrested with $19.75 in quarters in his pockets. The State presented evidence that the quarters came from the video poker machines located inside Wood's. To rebut the State's evidence, defense witness Joshua Curry testified that he and defendant tended bar the night before the incident. He continued that it had been "fifty-cent beer night" and customers had left quarters as tips. The following exchange took place:

Defense Counsel: What happens when they tell you to keep the change?

Joshua Curry: You put the quarters in the tip jar.

Defense Counsel: That night did you get a bunch of quarters in the tip jar?

Joshua Curry: Yeah. We do every night when we have 50-cent beer. They don't tip dollars; they tip 50 cents.

Defense Counsel: Okay. If you remember, do you remember whether [defendant] got a bunch of tips that night? How do you split the tips?

Joshua Curry: We split it right down the middle. Divide them at the end of the night.

Defense Counsel: Take the jug or whatever and pour it out?

Joshua Curry: Count it out and split it right down the middle.

Defense Counsel: Okay.

Trial Court: What do you do with your quarters when you get them?

Joshua Curry: Cash them in.

Trial Court: For dollars?

Joshua Curry: Sometimes I do, sometimes I don't.

Trial Court: You carry them for 48 hours in your pocket if there are 80 quarters?

Joshua Curry: He left early that night.

Trial Court: Go ahead.

Our Supreme Court considered this issue in *State v. Fleming*, 350 N.C. 109, 125-26, 512 S.E.2d 720, 732, *cert. denied,* 528 U.S. 941, 145 L. Ed. 2d 274 (1999).

> The judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury. . . . The law imposes on the trial judge the duty of absolute impartiality. The trial judge also has the duty to supervise and control a defendant's trial, including the direct and cross-examination of witnesses, to ensure fair and impartial justice for both parties. Furthermore, it is well recognized that a trial judge has a duty to question a witness in order to clarify his testimony or to elicit overlooked pertinent facts.
>
> . . . .
>
> In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized. The trial court has a duty to control the examination of witnesses, both for the purpose of conserving the trial court's time and for the purpose of protecting the witness from prolonged, needless, or abusive examination. In performing this duty, however, the trial court's position as the standard-bearer of impartiality requires that the trial judge must not express any opinion as to the weight to be given to or credibility of any competent evidence presented before the jury.

*Id.* (internal citations and quotations omitted).

The trial court did not comment on the credibility of the witness or his testimony. Rather, it just clarified the line of questioning concerning defendant's possession of the quarters, a pertinent fact. *Fleming*, 350 N.C. at 126, 512 S.E.2d at 732 ("[I]t is well recognized that a trial judge has a duty to question a witness in order to clarify his testimony or to elicit overlooked pertinent facts.") (citations omitted).

In addition, the trial court provided the following instruction to the jury immediately prior to their deliberations:

> As presiding judge, I am required by law to be impartial. Therefore, you shouldn't mistakenly infer that I have implied that any of the evidence should or should not be believed, that a fact has or has not been proven or what your findings ought to be.

Instead, you alone are to find the facts and to render a verdict reflecting the truth as you find it.

We hold the trial court's questions to the defense witness on the pertinent facts surrounding defendant's possession of quarters was not a comment on the witness's credibility or his testimony. The jury was instructed that the trial judge is required to be impartial. This assignment of error is overruled.

## V. Conspiracy to Commit Felony Murder

[5] Defendant argues that North Carolina does not recognize conspiracy to commit felony murder and the trial court erred in submitting the offense to the jury. We disagree.

Our Supreme Court addressed this issue in *State v. Gibbs*, 335 N.C. 1, 51, 436 S.E.2d 321, 350 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). The defendant in *Gibbs* contended "the trial court erred by instructing the jurors that they could convict him of conspiracy to commit murder if they found an agreement to commit felony murder." *Id.* The Court disagreed, holding "[f]irst-degree murder by reason of felony murder is committed when a victim is killed during the perpetration or attempted perpetration of certain enumerated felonies or a felony [is] committed or attempted with the use of a deadly weapon . . . . In felony murder, the killing may, but need not, be intentional." *Id.* The key component, however, is the jurors must be instructed that "to find a conspiracy to commit murder, they must first find an agreement to commit first-degree murder." *Id.*

Here, the trial court instructed the jury as follows:

the State must prove three things beyond a reasonable doubt: First, that the defendant and Danielle Edsel entered into an agreement; second, that the agreement was to commit first-degree murder . . . [;] [a]nd third, that the defendant and Danielle Edsel intended the agreement to be carried out at the time it was made.

This instruction requiring the jury to find an agreement and specific intent to kill "eliminated the possibility that an unintentional felony murder formed the basis for the specific intent underlying the conspiracy of which they convicted defendant." *Id.* at 52, 436 S.E.2d at 350. This assignment of error is overruled.

## VI. Ineffective Assistance of Counsel

**[6]** Defendant contends he was deprived of his constitutional right to effective assistance of counsel when defense counsel allowed the letters to be admitted. We disagree.

Our Supreme Court adopted the United States Supreme Court's language in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984), concerning claims of ineffective assistance of counsel. *State v. Braswell*, 312 N.C. 553, 324 S.E.2d 241 (1985). The *Braswell* Court developed a two-part test in considering these arguments:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

312 N.C. at 562, 324 S.E.2d at 248 (quoting *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693).

> The fact that counsel made an error, *even an unreasonable error*, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings. This determination must be based on the totality of the evidence before the finder of fact.

*Id.* at 563, 324 S.E.2d at 248 (citations omitted) (emphasis supplied). "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Id.* at 563, 324 S.E.2d at 249.

The State presented overwhelming testimonial and physical evidence of defendant's guilt. Triplett, Triplett's sister and brother-in-law, Wilkes County Sheriff's deputies, and Edsel testified defendant and Edsel planned to rob and kill Triplett to prevent their identification. Triplett survived the murder attempt and identified both defendant and Edsel as those who shot him. He also identified both as those who stole items from his home and Wood's. Triplett's sister and brother-in-law corroborated Triplett's testimony and testified when

they arrived at Triplett's home, defendant and Edsel were found with items stolen from Triplett's home and from Wood's. Wilkes County Sheriff's deputies testified defendant and Edsel were found in a car in possession of items stolen from Triplett's home and from Wood's. A State Bureau of Investigation agent testified bullet fragments removed from Triplett's skull were fired from a gun like the one defendant and Edsel used.

Defendant asserts his trial counsel committed prejudicial error by allowing the admission of letters written back and forth between defendant and Edsel. All of the evidence set out above was presented and properly admitted in addition to the letters allegedly admitted by defense counsel's error in judgment. Defendant fails to show and our review of the record and transcripts does not indicate a "reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different . . . ." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249. This assignment of error is overruled.

### VII.  Conclusion

The trial court did not commit plain error by admitting letters written by defendant and Edsel into evidence. The trial court clarified and did not improperly comment on testimony by asking a witness additional questions. Defendant was properly charged and convicted of conspiracy to commit first-degree murder under the felony murder rule. Defendant was not prejudiced by his counsel's alleged error in judgment leading to the admission of evidence. Defendant received a fair trial, free from prejudicial errors he assigned and argued.

No error.

Judge ELMORE concurs.

Judge WYNN concurs in the result by separate opinion.

WYNN, Judge concurring in result.

While I concur in the result, I write separately to comment further on the trial court's questioning of a witness and the conspiracy to commit felony murder.

Regarding the trial court's questioning of a witness, "the trial court is permitted to 'interrogate witnesses, whether called by itself or by a party,' N.C.G.S. § 8C-1, Rule 614(b) (1992), 'in order to clarify.

confusing or contradictory testimony,' *State v. Ramey*, 318 N.C. 457, 464, 349 S.E.2d 566, 571 (1986)." *State v. Corbett*, 339 N.C. 313, 328, 451 S.E.2d 252, 260 (1994).

In the case at bar, Defendant had $19.75 in quarters in his pockets, and the State presented evidence that the quarters came from game machines located inside Wood's Grocery Store. The defense rebutted with witness Joshua Curry, who testified that he and Defendant tended bar together the night before the alleged crimes, when it had been fifty-cent beer night. Joshua Curry testified that customers left quarters as tips. After testifying that he and Defendant split the quarters in the tip jar in half, the trial court then asked:

Trial Court:     What do you do with your quarters when you get them?

Joshua Curry:  Cash them in.

Trial Court:     For dollars?

Joshua Curry:  Sometimes I do, sometimes I don't.

Trial Court:     You carry them for 48 hours in your pocket if there are 80 quarters?

Joshua Curry:  He left early that night.

The trial court's questions here do not clarify confusing or contradictory testimony. While we have only the benefit of the cold record to review this exchange, it is logical to conclude that the questioning, particularly "You carry them for 48 hours in your pocket if there are 80 quarters?" with voice inflections, may have come uncomfortably close to an opinion as to the credibility of the witness's testimony. As this Court has made clear,

Trial judges are prohibited from expressing an opinion by N.C. Gen. Stat. § 15A-1222 (1978). They must be careful in what they say and do because a jury looks to the court for guidance and picks up the slightest intimation of an opinion. It does not matter whether the opinion of the trial judge is conveyed to the jury directly or indirectly as every defendant in a criminal case is entitled to a trial before an impartial judge and an unbiased jury. *State v. Whitted*, 38 N.C. App. 603, 248 S.E.2d 442 (1978).

*State v. Sidbury*, 64 N.C. App. 177, 178-79, 306 S.E.2d 844, 845 (1983). Nevertheless, "not every improper remark made by the trial judge requires a new trial[,]" and "the underlying result may manifest mere

harmless error." *State v. Summerlin*, 98 N.C. App. 167, 174, 390 S.E.2d 358, 361 (citations omitted), *disc. review denied*, 327 N.C. 143, 394 S.E.2d 183 (1990). Here, given the overwhelming weight of the evidence against Defendant, any error in the trial court's questioning would have been harmless.

Regarding conspiracy to commit felony murder, Defendant posits that North Carolina does not recognize conspiracy to commit felony murder. The two cases on which Defendant heavily relies in making his argument are *State v. Lea*, 126 N.C. App. 440, 485 S.E.2d 874 (1997), and *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000). While those cases addressed attempted felony murder and attempted second-degree murder, respectively, their reasoning, particularly that in *Lea*, also applies to conspiracy to commit felony murder.

In *Lea*, this Court stated:

[A] conviction of felony murder requires no proof of intent other than the proof of intent necessary to secure conviction of the underlying felony. *Id.*

To convict a defendant of criminal attempt, on the other hand, requires proof that the defendant *specifically intended* to commit the crime that he is charged with attempting. *E.g.*, *State v. McAlister*, 59 N.C. App. 58, 60, 295 S.E.2d 501, 502 (1982), *disc. review denied*, 307 N.C. 471, 299 S.E.2d 226 (1983). An attempt, by definition, "is an act done with intent to commit that crime, carried beyond mere preparation to commit it, but falling short of its actual commission." *Id.* "Although a murder may be committed without an intent to kill, attempt to commit murder requires a specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351, 114 L. Ed. 2d 385, 393, 111 S. Ct. 1854 (1991) (citation omitted).

We conclude that a charge of "attempted felony murder" is a logical impossibility in that it would require the defendant to intend what is by definition an unintentional result. Accordingly, the offense of "attempted felony murder" does not exist in North Carolina.

*Lea*, 126 N.C. App. at 449-50, 485 S.E.2d at 880. And in *Coble*, our Supreme Court affirmed *Lea* and held:

Because specific intent to kill is not an element of second-degree murder, the crime of attempted second-degree murder is a logical

impossibility under North Carolina law. The crime of attempt requires that the actor specifically intend to commit the underlying offense. *See Hageman,* 307 N.C. at 13, 296 S.E.2d at 441. It is logically impossible, therefore, for a person to specifically intend to commit a form of murder which does not have, as an element, specific intent to kill.

*Coble,* 351 N.C. at 451, 527 S.E.2d at 48.

While neither *Lea* nor *Coble* addresses conspiracy to commit felony murder, extending the logic particularly of *Lea* could lead one to conclude that conspiracy to commit felony murder is also a logical impossibility, given the requirement for specific intent for conspiracy and the lack of such requisite intent for felony murder. Nevertheless, a prior North Carolina Supreme Court case, *State v. Gibbs,* 335 N.C. 1, 51-52, 436 S.E.2d 321, 350 (1993), explicitly upheld a conspiracy to commit felony murder conviction. And because *Lea,* a Court of Appeals case, could not overrule *Gibbs,* and neither *Lea* nor *Coble* directly addressed conspiracy to commit felony murder, *Gibbs* controls, and this Court is constrained to hold that Defendant's conviction of conspiracy to commit felony murder must stand. I do, however, respectfully urge our Supreme Court to grant review on this issue, if requested by Defendant, to give greater clarity on the law controlling this issue.