STATE OF NORTH CAROLINA
v.
RODERICK GERRARD BRUNSON
No. COA08-1001
Court of Appeals of North Carolina
Filed August 4, 2009
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for the State.
J. Clark Fischer, for defendant-appellant.
CALABRIA, Judge.
Roderick Gerrard Brunson ("defendant") appeals the trial court's judgment entered upon jury verdicts finding him guilty of trafficking in cocaine by possessing 400 grams or more of cocaine, trafficking in cocaine by transporting 400 grams or more of cocaine, and of conspiracy to commit trafficking in cocaine by possessing 400 grams or more of cocaine. We find no error.
On 9 October 2000, Detective Kyle Shearer ("Detective Shearer"), with the Vice/Narcotics Division of the Greensboro Police Department, received a tip from a sergeant in the narcotics unit and went to Bent Tree Apartments in Greensboro where he observed a silver 2000 Mercedes SL500 ("the Mercedes"). He discovered that the Mercedes was registered to defendant at an address in Eden, North Carolina. Two days later, on 12 October 2000, Detective Shearer returned to Bent Tree Apartments, and observed a 1995 burgundy Nissan Maxima ("the Nissan") with Virginia license plates. The Nissan was registered to James Albert Martin ("Martin"). Martin's car was parked 30 or 40 feet from defendant's Mercedes. Detective Shearer watched defendant leave an apartment building and approach the Nissan. Defendant opened the trunk of the Nissan and appeared to move some items. Then, defendant got into his silver Mercedes and drove off towards Market Street.
Five days later, on 17 October 2000, there were fifteen law enforcement officers, including Detective Shearer, performing surveillance in the neighborhood of Bent Tree Apartments. Detective Shearer drove to Market Street to watch the activity at an Etna gas station and car wash. The Etna station was approximately one-half mile from Bent Tree Apartments. Detective Shearer observed a white Ford Excursion ("the Excursion") parked in the back lot of the car wash. The driver of the Excursion was not using the car wash facilities, but was alternately seated or standing beside the vehicle. At different times, several other vehicles approached the Excursion. Eventually, defendant drove up in the Nissan. Defendant and the driver of the Excursion talked for four or five minutes before defendant exited the lot.
Two days later, on 19 October 2000, Detective Shearer again observed Martin drive to Bent Tree Apartments in a Lexus coupe, ("the Lexus"). Defendant exited the apartment, walked up to the Lexus, and the two men went back inside the building for four or five minutes. When they came out, defendant was carrying a white plastic bag with a handle and black lettering on the side. The bag appeared to be from a clothing store and was "weighted," as if it had material inside it. Defendant got into the Mercedes. Martin got into the Lexus and followed defendant as he exited the parking lot. Detective Shearer followed them to a gas station. Defendant and Martin got out of their cars and spoke to one another. Defendant got into the Mercedes and drove out of the parking lot. Martin returned to sit in the Lexus and made a cell phone call. Detective Shearer called every vice unit he could because he had formed an opinion that "a narcotics transaction was about ready to occur."
Martin drove to a nearby Chick-fil-A restaurant. Martin parked, got out of his car, looked around, and entered the vestibule of the restaurant. Martin stayed in the vestibule, did not enter the dining area and did not order any food. Martin continued to talk on his cell phone while in the vestibule. Detective Shearer testified that "[h]e stayed in that area looking outward toward the parking lot, and, like I say, he looked like he was, in my opinion, doing counter-surveillance, looking to see if anybody was watching." Martin appeared to be very aware of what was going on around him.
Martin got back into his car and drove to another section of the parking lot near a Harris Teeter. He remained in that location for about fifteen minutes before moving to yet another spot in the parking lot. Detective Shearer testified that he "really felt there was going to be a meet-again between the subjects." Detective Shearer watched a Cadillac drive up and flash its high beams on and off and he saw the brake lights come on in Martin's Lexus. The two cars drove along the front of the Harris Teeter, from west to east, and then turned right along the east side of the Harris Teeter. Defendant exited the passenger side of the Cadillac, and got into the passenger side of the Lexus. First, the cars drove together toward the Frances King Street exit, then they drove in two different directions.
Sergeant Tom Kroh, ("Sergeant Kroh"), and Detective John Marsh, ("Detective Marsh"), with the Greensboro Police Department, stopped the Cadillac. After the driver gave the officers consent to search the Cadillac, the officers found a white plastic bag with cocaine inside. Detective Marsh believed that the cocaine weighed between one quarter and one half of a kilogram, which he estimated was about a pound or half a pound. Detective Shearer testified the bag was similar in appearance to the one that defendant was carrying earlier that evening. Meanwhile, Detective Shearer and two other officers stopped the Lexus and arrested defendant. Defendant had $1,450.00 in cash on his person. Officers searched the apartment where defendant lived and found $1,003.00 in loose change and paper currency, a pistol, a bag of marijuana, and a cocaine wrapper with white residue, among other items.
Prior to trial, the trial court denied co-defendants' Brunson and Foye's joint motion to suppress evidence seized during the officers' searches of the vehicles and apartments and co-defendants' statements made before their arrests. Co-defendant Foye was the driver of the Cadillac in which defendant rode and in which the cocaine was found. The trial court allowed, however, co-defendants' motion to suppress statements made subsequent to their arrests.
At trial in Guilford County Superior Court, the jury returned guilty verdicts for trafficking in cocaine by possessing 400 grams or more of cocaine, trafficking in cocaine by transporting 400 grams or more of cocaine, and for conspiracy to commit trafficking in cocaine by possessing 400 grams or more of cocaine. Defendant was sentenced to a minimum of 175 months to a maximum term of 219 months in the North Carolina Department of Correction. Defendant appeals.
Defendant contends that the trial court should have excluded Detective Shearer's testimony regarding the street value in the year 2000 of the 505.8 grams of the cocaine found in the Cadillac on the grounds that trafficking by transporting and possessing is defined solely by the weight of the contraband at issue, and, therefore, the street value of the cocaine is irrelevant and prejudicial under North Carolina Rules of Evidence 401, 402 and 403. We disagree.
Defendant properly preserved the evidentiary record by objecting to the admission of testimony regarding the current street value of the cocaine seized. However, defendant failed to object to the admission of testimony regarding the street value of the cocaine in the year 2000, as follows:
Q: Can you tell me something of what you understand based upon your experience, your work in narcotics, what the approximate street value of that might be?
[DEFENSE COUNSEL]: Objection to what it is now.
THE COURT: Overruled.
Q: In 2000.
A: Can I give what it was in 2000? What my estimation was?
THE COURT: I think he rephrased the question as to what it was back in 2000. So the question to you now, sir, is "What would have been its value in 2000?"
A. By my recollection, half a kilo of cocaine binded in the full form, it would cost anywhere between $12or $10,000 to $12,000, $14,000.
Further, defendant failed to assign as plain error the trial court's admission of testimony regarding the street value in the year 2000 of the cocaine.
N.C. R. App. P. 10(b)(1) requires a party to "present to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds are not apparent from the context." Here, the specific grounds defendant argues on appeal are relevance and prejudice. At trial, defendant objected to the admission of testimony about the current street value of the cocaine, but made no objection to the testimony that followed regarding the street value of the cocaine in 2000.
If an issue is not preserved by timely objection or by rule or law, it may be reviewed as plain error when it is specifically alleged to amount to plain error. N.C. R. App. P. 10(c)(4). State v. McDougald, 181 N.C. App. 41, 47-48, 638 S.E.2d 546, 551 (2007), rev'd on other grounds by 362 N.C. 224, 657 S.E.2d 351 (2008) (since defendant did not properly object to the testimony and failed specifically and distinctly to allege plain error, issue not preserved for review).
In State v. Holbrook, 137 N.C. App. 766, 767-68, 529 S.E.2d 510, 511 (2000), this Court defined plain error as follows:
Plain error is error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912, 108 S. Ct. 1598 (1988). Our Supreme Court has stated that:
"The plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or `where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has '"resulted in a miscarriage of justice or in the denial to appellant of a fair trial"' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said `the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.'"
State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted) (emphasis in original)). "In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(c)(4) (emphasis added). The North Carolina Supreme Court has chosen to review such "unpreserved issues for plain error when . . . the issue involves either errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence." State v. Cummings, 346 N.C. 291, 313-14, 488 S.E.2d 550, 563 (1997), cert. denied, 522 U.S. 1092, 139 L. Ed. 2d 873, 118 S. Ct. 886 (1998).
Although defendant did not specifically allege plain error in his assignment of error or in his brief, we exercise discretion to consider the merits of defendant's argument under N.C. R. App. P. 2, which authorizes "either court of the appellate division" to "suspend or vary the requirements or provisions of any of these rules..." on the grounds stated by this Court as follows:
Although N.C.R. App. P. Rule 2 is available to prevent "manifest injustice," the Supreme Court has stated that this residual power to vary the default provisions of the appellate procedure rules should only be invoked rarely and in "exceptional circumstances." State v. Hart, 361 N.C. 309, 316-17, 644 S.E.2d 201, 205-06 (2007); see also Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co., 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008). After careful consideration, we will reach the merits of defendant's ... claim under N.C.R. App. P. 2 for several reasons.
State v. Gayton-Barbosa, ___N.C. App.___, 676 S.E.2d 586, 589-90 (2009).
The fact that defendant first objected to admission of testimony regarding the current street value of the cocaine, but then failed to renew his objection when the question was re-stated to elicit the street value of the cocaine in the year 2000 merits consideration of this issue under a plain error analysis.
Defendant contends that Detective Shearer's testimony regarding the street value in the year 2000 of the cocaine was not relevant, was prejudicial, and should not have been admitted by the trial court. We disagree.
"`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2003). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact at issue." State v. Sloan, 316 N.C. 714, 724, 343 S.E. 2d 527 533 (1986) (citations omitted). Our Supreme Court has "interpreted Rule 401 broadly and [has] explained on a number of occasions that in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." State v. Collins, 335 N.C. 729, 735, 440 S.E. 2d 559, 562 (1994) (citations omitted).
State v. Curry, 171 N.C. App. 568, 574-75, 615 S.E.2d 327, 332 (2005).
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice..." N.C. Gen. Stat. § 8C-1, Rule 403 (2007). Detective Shearer's testimony regarding the street value of cocaine in an amount between $10,000.00 and $14,000.00 in the year 2000 was not prejudicial to defendant. The jury also heard testimony that defendant owned a high-value, late-model Mercedes SL500 and that, at the time of his arrest defendant had $1,450.00 in cash on his person. Further, the jury heard testimony that Detective Shearer had found another $1,003.00 in loose change and paper currency and some of defendant's personal effects, where defendant lived at Hidden Lakes Apartments.
This Court has previously held in an opinion regarding a trafficking case that "...evidence of the value of the cocaine was both helpful and relevant in showing defendant intended to distribute the narcotics and was therefore engaged in trafficking in cocaine." State v. McCoy, 105 N.C. App. 686, 689-90, 414 S.E. 2d 392, 394-95 (1992). In accord with McCoy, we find the evidence in the instant case was relevant, and there was no prejudice to defendant by its admission. Assuming, arguendo, that it was error, this error was not so fundamental or prejudicial as to amount to plain error, rather it was harmless error.
In his second argument, defendant contends that the trial court erred when it overruled defendant's objections and admitted into evidence three statements by Detective Shearer regarding his surveillance of potential narcotics transactions. The statements were as follows: "It was my opinion that a narcotics transaction was about ready to occur."; "He looked like he was, in my opinion, doing counter-surveillance, looking to see if anybody was watching."; "I really felt there was going to be a meet-again between the subjects."
Defendant contends the officer impermissibly gave opinion testimony as to the state of mind or guilt of defendant and cites State v. Carrillo, 164 N.C. App. 204, 595 S.E.2d 219 (2004). Carrillo is distinguishable, however, from the case at bar. In Carrillo, the officer testified defendant's reaction to his questioning, by dropping his head and not saying anything showed that "he realized he had been caught." Id. at 209-10, 595 S.E.2d at 223. The officer further testified that 99-100% of the people who acted similarly "have been guilty." Id. at 210, 595 S.E.2d at 223.
Under N.C. Gen. Stat. 8C-1, Rule 701, "Opinion testimony from a lay witness is permitted when it is `rationally based on a perception of the witness' and is helpful to the jury. As long as the lay witness has a basis of personal knowledge for his opinion, the evidence is admissible." State v. Bunch, 104 N.C. App. 106, 110, 408 S.E.2d 191, 194 (1991). Testimony regarding common practices of drug dealers has been held not to be prejudicial. Id. Given the Detective Shearer's training as a narcotics officer, and nine to ten years of experience performing narcotics investigations, his testimony about common practices of drug dealers was rationally based on his perception and not unduly prejudicial. The trial court did not commit an abuse of discretion in admitting his testimony.
The record on appeal includes additional assignments of error not addressed by defendant in his brief to this Court. Pursuant to N.C. R. App. P. 28(b)(6) (2009), we deem them abandoned and need not address them.
No error.
Judges HUNTER, Robert C. and HUNTER, JR., Robert N. concur.
Report per Rule 30(e).